# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| THE BARBOUR GROUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-cv-2557-JAR-KMH |
| | ) | |
| ENCON INTERNATIONAL, INC., | ) | |
| ALEX WOELPER, and SHU FEI WOELPER, | ) | |
| a/k/a TING JEN WOELPER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

On August 24, 2012, Plaintiff The Barbour Group filed a complaint seeking contractual indemnification and a declaratory judgment against Defendants Encon International, Inc. ("Encon"), Alex Woelper, and Shu Fei Woelper. Plaintiff served as a broker for Defendants when Defendants purchased a payment and performance bond necessary for Defendants to secure a federal superfund clean-up contract. In a separate lawsuit,[1] Defendants undertook litigation related to the bond against Plaintiff and against the individual who sold them the surety, and Plaintiff now seeks indemnification for that litigation, pursuant to Plaintiff's contract with Defendants. On October 29, 2012, Defendants filed a Motion to Dismiss (Doc. 4), pursuant to Federal Rule of Civil Procedure 12(b)(6), which is currently before the Court. Defendants argue that Plaintiff's claims were compulsory counterclaims in the other pending action, and that Plaintiff's failure to raise them in that case bars Plaintiff from raising them here. Defendants also argue that the indemnification provision is inapplicable under its own terms and that the

---

[1]*ENCON Int'l, et al., v. Linda Garrahan, et al.,* No. 11-cv-2137-KGS (D. Kan.).

provision does not indemnify Plaintiff for suits based on its own negligence. The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court denies the motion but transfers this matter to Judge Sebelius for further proceedings.

**I.        Legal Standard**

Rule 12(b)(6) provides a vehicle for a party to challenge the legal sufficiency of a claim. The requirements underlying the legal sufficiency of a claim stem from Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[2] To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[3] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[5] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that

---

[2] Fed. R. Civ. P. 8(a).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

Exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss.[12] Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence.[13] However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without

---

[7]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[8]*Id.*

[9]*Id.* at 679.

[10]*Id.*

[11]*Id.* at 678.

[12]*Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006).

[13]*Id.*

3

converting the motion to dismiss into a motion for summary judgment.[14] This allows the court to "take judicial notice of its own files and records, as well as facts which are a matter of public record."[15] However, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein."[16]

## II. Factual Allegations

The following facts are alleged in Plaintiff's Complaint and are construed in the light most favorable to Plaintiff. Defendant Encon is a corporation organized and existing under the laws of the state of Texas, and it is registered to do business as a foreign corporation in the state of Kansas. Defendant Alex Woelper is the principal owner of Encon. Defendant Shu Fei Woelper is an individual indemnitor under the contract at issue in this case.

In Fall 2008, Defendant Encon was attempting to secure a contract with the federal Environmental Protection Agency ("EPA") to provide environmental remediation services for contaminated soil in Cherokee County, Kansas (the "Contract"); the Contract required that Encon provide a payment and performance bond. Encon, through its principal, Defendant Woelper, entered into a broker/client relationship with Plaintiff TBG, wherein Plaintiff agreed to assist Encon in obtaining a payment and performance bond. On or about September 27, 2008, as a precondition to TBG brokering the bonds that enabled Encon to secure the Contract, Woelper, on behalf of Encon, completed and signed and provided to TBG a Contractor's Questionnaire that contained the following language:

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

4

> The following statement must be signed by an owner or officer of the company for which bonding is being requested. The undersigned further acknowledge(s) the following:
>
> 3) All applicants/bonding clients (defined as any indemnitor who has signed an indemnity agreement on behalf of any surety) of The Barbour Group, LLC, jointly and severally, shall indemnify and hold harmless The Barbour Group, LLC and The Barbour Group, LLC's members, managers, agents, subagents, and employees from and against any and all claims, proceedings, investigations, liabilities, damages, losses, actions, demands, judgments, costs and expenses, including attorney's and experts' fees resulting from, or arising out of any surety offered by an individual or out of any corporate surety that becomes downgraded and insolvent. If the decision is to pursue bonding by an individual surety, all applicants, jointly and severally, acknowledge and agree that any bonds issued by an individual surety may not be accepted by the owner awarding the contract or bid.

The EPA awarded the Contract to Encon and provided for three option years, and Encon commenced work in Kansas pursuant to the Contract. On October 27, 2008, Linda Garrahan executed a performance bond and payment bond for the Contract. At the same time, Garrahan executed an Affidavit of Individual Surety. On or about November 5, 2008, Defendants executed a General Agreement of Indemnity acknowledging their status as "Indemnitors, corporately and individually, jointly and severally," which acknowledged the validity of the previous indemnity agreements executed by Defendants. TBG relied on the indemnification and hold harmless agreements to proceed with the brokering and bonding of the EPA Contract, including the option years.

On September 15, 2010, Encon commenced an action in the United States District Court for the Western District of Texas, styled *Encon International, Inc., Plaintiff v. Linda Garrahan, Brian Garrahan, Quantum Partners, Inc. and 1st Capital Lending Fund, Inc., Defendants*, Case No. 3:10-cv-335 (the "Texas Action"). On March 4, 2011, the Texas Action was transferred

from the United States District Court for the Western District of Texas to the United States District Court for the District of Kansas, Case No. 2:11-cv-02137-KGS (the "Kansas Action"). On or about July 22, 2011, Encon filed its Second Amended Complaint in the Kansas Action, adding TBG as a defendant in that case. On December 16, 2011, Encon added Woelper and Defendant Shu-Fei Woelper as additional plaintiffs in the Kansas Action. TBG is incurring expenses, including attorneys' fees and expert's fees, as a result of defending the Kansas Action.

On January 25, 2012, TBG, through its counsel, formally tendered to Defendants, individually and jointly and severally, all of the claims made against TBG in the Kansas Action and made a demand that Defendants, individually and jointly and severally, fully and unconditionally defend, indemnify and hold TBG harmless from any and all tendered claims, including but not limited to any and all claims pending in the Kansas Action. Defendants have failed to respond to TBG's demand for defense and indemnity.

On June 14, 2012, TBG filed a motion for leave to assert a counterclaim against Defendants Encon and the Woelpers in the pending Kansas action. On July 16, 2012, Judge Sebelius denied TBG's motion for leave to assert a counterclaim. Judge Sebelius found TBG had not shown "good cause" to amend the scheduling order deadline in order to allow the counterclaim. Judge Sebelius also found TBG had "unduly delayed" in seeking to amend the pleadings when the scheduling order required all motions to amend pleadings be filed by Nov. 30, 2011. TBG did not appeal this order pursuant to Rule 72(b)(2).

## III. Discussion

### A. Compulsory Counterclaim

A compulsory counterclaim in one action cannot form the basis for a later action.[17] Whether a claim was compulsory in a previous action is a procedural issue, which the Court determines under federal law.[18] Compulsory counterclaims are governed by Fed. R. Civ. P. 13(a)(1), which requires that:

> a pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.[19]

For the sake of judicial efficiency, Rule 13(a) is "designed to promote joinder of related claims in the same litigation."[20] As the Supreme Court explained,

> [t]he requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint.[21]

In this case, the indemnification claim was a compulsory counterclaim in the Kansas Action. First, the action meets the requirements set out in Rule 13(a)(1)(B); the parties in this

---

[17] *Pipeliners Local Union No. 798, Tulsa, Okla. v. Ellerd*, 503 F.2d 1193, 1197 (10th Cir. 1974).

[18] *See Avemco Ins. Co. v. Cessna Aircraft Co.*, 11 F.3d 998, 1000 (10th Cir. 1993); *see also Baker v. Gold Seal Liquors*, 417 U.S. 467, 469 (1974).

[19] Fed. R. Civ. P. 13(a)(1).

[20] *Avemco*, 11 F.3d at 1001.

[21] *S. Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962).

7

action are the same as in the pending Kansas Action,[22] and so addressing the indemnification claim in the Kansas Action would not have required adding any other parties over whom the court in that case would have lacked jurisdiction.

Second, this action satisfies Rule 13(a)(1)(A) because it arises out of the same "transaction or occurrence" as the Kansas Action. The terms "transaction" and "occurrence" have flexible and realistic constructions to serve the policy goal of resolving all related controversies in one action.[23] Actions are of the same "transaction" or "occurrence" when: (1) the same issues of fact or law are raised, (2) res judicata would bar subsequent suit over the claim, (3) the same evidence will support or refute the respective claims, or (4) there is a logical relation between the original claim and the counterclaim.[24] The "logical relation" test is the most controlling,[25] but any affirmative answer to these factors indicates the claim is compulsory.[26]

There is a clear logical relation between the present counterclaim and the original claim in the Kansas Action. A "logical relation" exists when the claim and counterclaim have a common origin and common subject matter.[27] This action and the Kansas Action both arise from the contractual relationship between the parties and from the parties' actions within the relationship, which establishes a logical relation between the claims in the Kansas Action and the

---

[22]*ENCON Int'l, et al., v. Linda Garrahan, et al.,* No. 11-cv-2137-KGS (D. Kan.).

[23]*Pipeliners*, 503 F.2d at 1198.

[24]*Driver Music Co., Inc. v. Commercial Union Ins. Cos*, 94 F.3d 1428, 1435 (10th Cir. 1996) (citing *FDIC v. Hulsey*, 22 F.3d 1472, 1487 (10th Cir. 1994)).

[25]*Pipeliners*, 503 F.2d at 1198 (10th Cir. 1974).

[26]*Hulsey*, 22 F.3d at 1487.

[27]*Adamson v. Dataco Derex, Inc.*, 178 F.R.D. 562, 564 (D. Kan. 1998) (citing to *Pipeliners*, 503 F.2d at 1198); *Glasgow v. Eagle Pac. Ins. Co.*, 45 F.3d 1401, 1402-03 (10th Cir. 1995) (discussing New Mexico's rule governing compulsory counterclaims, which is "virtually indistinguishable from the federal rule").

proposed claims in this action. Further, under the first factor, many of the same issues of fact and law that will likely be raised in the Kansas Action are essentially the same as the claims raised in this action. While the Kansas Action involves several claims against Plaintiff that deals with different facts and law, Plaintiff's Amended Answer to the Fourth Amended Complaint in the Kansas Action specifically lists as their ninth affirmative defense that Defendant agreed to indemnify and hold TBG harmless. Because of such an affirmative defense, it is highly likely the same facts and law that will be addressed in this case will also be addressed in the Kansas action. Similarly, under the third factor, the same evidence needed to prove the affirmative defense in the Kansas Action would also be necessary in this action. Under these three factors, the claim at issue in the case is of the same "transaction or occurrence" as the original claim, making it a compulsory counterclaim in the Kansas Action.

Plaintiff agrees that the claim was of the same transaction or occurrence at issue in the Kansas Action, but argues the claim was premature when they served their answer in the Kansas action; a claim that otherwise would be compulsory and thereby barred because it arose from the same transaction or occurrence as another previous action will not be barred if the claim is not mature at the time of the pleading.[28] In other words, "[a] claim which depends for its success on the outcome of a lawsuit does not mature until completion of that lawsuit, and therefore is not lost by reason of failure to plead it as an original claim or compulsory counterclaim in that litigation."[29] Plaintiff argues the claim was not mature because the Defendants cannot indemnify Plaintiff until there is a final resolution in the Kansas action.

---

[28] *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1276 (10th Cir. 2006).

[29] *Answering Serv., Inc. v. Egan*, 728 F.2d 1500, 1507 (D.C. Cir. 1984) (Scalia, J., concurring in the result).

9

Whether or not an indemnification claim depends for its success on the outcome of a lawsuit is determined by the exact wording of the indemnity provision, which explains what is to be indemnified.[30] Interpretation of an indemnity provision in a contract is a substantive law question, not a procedural question, so the Court will apply Kansas choice-of-law rules to determine what law to apply when interpreting the contract.[31] When interpreting a contract under Kansas law, "[a] contract is made where the last act necessary for its formation occurs."[32] Plaintiff states that the indemnity provision, part of the Contractor's Questionnaire, was signed in Texas and that it was the last act necessary to complete the indemnification contract.[33] Defendant does not contest this assertion; therefore, the Court determines that Texas substantive law governs the interpretation of the indemnity provision, including the determination of when any claim based on the provision would be mature.

The Texas Supreme Court addressed a similar issue in *Ingersoll-Rand Co. v. Valero Energy Corp.*[34] Before that case began, Valero, a corporation that owned an oil refinery, sued Kellogg, its contractor on a construction project, and Ingersoll-Rand, a subcontractor on the same project, for damages caused by malfunctioning equipment in *Valero Energy Corp. v. Kellogg Construction Co.*[35] Kellogg and Ingersoll-Rand asserted portions of the indemnity and

---

[30]*See Safway Steel Prods. v. Casteel Constr. Co.*, 3:95-CV-692-RP, 1998 WL 792189, at *4 (N.D. Ind. Nov. 3, 1998).

[31]*Lone Star Steakhouse & Saloon, Inc. v. Liberty Mut. Ins. Grp.*, 343 F. Supp. 2d 989, 1006 (D. Kan. 2004).

[32]*Detlefsen v. Deffenbaugh Indus., Inc.*, 04-2577-JWL, 2005 WL 2323225, at *2 (D. Kan. Sept. 22, 2005) (citing to *Layne Christensen Co. v. Zurich Can.*, 38 P.3d 757, 766 (Kan. App. 2002)).

[33]Doc. 6 at 4.

[34]997 S.W.2d 203 (Tex. 1999) ("*Valero II*").

[35]*Valero Energy Corp. v. Kellogg Constr. Co.*, 866 S.W.2d 252 (Tex.App.1993, writ denied) ("*Valero I*").

hold harmless provisions in their contract with Valero, and the court granted them summary judgment against Valero.[36] The indemnity provision at issue provided that, "[Valero] shall release, defend, indemnify and hold harmless [Kellogg, and Ingersoll-Rand] . . . against all claims liabilities, loss or expense, including legal fees and court costs in connection therewith, arising out of or in connection with this Agreement."[37] After summary judgment, Kellogg and Ingersoll-Rand sought attorney's fees under the indemnity provision, and Valero responded that the fee-indemnity claims were compulsory counterclaims not timely urged during the first summary judgment motion and were therefore waived.[38] The trial court and the Texas appellate court both agreed that the claims were compulsory under Texas law; the Texas Supreme Court determined that "[t]he pivotal question in this case is when does an indemnitee's contractual claim for indemnification mature for purposes of the compulsory counterclaim rule."[39] This is the same issue the Court faces in this case, and, as noted, it is an issue of state substantive law determined by the wording of the contract itself. The Texas Supreme Court reasoned:

> A claim is mature when it has accrued. To determine the correct accrual date of an indemnity claim we look to the contract's indemnity provision. There are two types of indemnity agreements, those that indemnify against liabilities and those that indemnify against damages. Broad language, like that in this contract, that holds the indemnitee "harmless" against "all claims" and "liabilities" evidences an agreement to indemnify against liability. Such provisions entitle the indemnitee to recover when the liability becomes fixed and certain, as by rendition of a judgment, whether or not the indemnitee has yet suffered actual damages, as by payment of

---

[36]*Valero II*, 997 S.W.2d at 205.

[37]*Id.* at 206.

[38]*Id.*

[39]*Id.* at 205.

11

a judgment.[40]

In short, "Any claim [the indemnitee] could have asserted, however, could not have accrued until all of [the indemnitee]'s potential liabilities to [the indemnitor] became fixed and certain by rendition of a judgment."[41] Although the indemnification clause at issue in *Valero II* could be read to include both damages and liability, the Texas Supreme Court read it broadly and applied the liability rule for maturity to the entire clause.[42]

Similarly, in the case at bar, the indemnification provision contains broad language that entitles the indemnitee to recover when the liability becomes fixed and certain. The claim was not mature at the time Plaintiff filed its response in the underlying case, and so Plaintiff is not now barred from asserting that claim.[43] Thus, the Court denies Defendants' motion to dismiss on the compulsory counterclaim grounds.

Defendant argues that *Getty Oil v. Insurance Company of North America*[44], another Texas case, compels a different result, but *Getty Oil* turns on Texas res judicata principles, not on the maturity of an indemnification claim under Texas law.[45] "The res judicata effect of a judgment rendered by a federal court in a diversity action is determined by federal common law. In so doing, the forum court should apply the law of the state in which the judgment was

---

[40]*Id.* at 207 (citations omitted).

[41]*Id*. at 208.

[42]*See Id.* at 210.

[43]*See Raytheon Aircraft Credit Corp. v. Pal Air Int'l., Inc.*, 923 F.Supp. 1408, 1417 (D. Kan. 1996) (holding that a claim cannot be a compulsory counterclaim if it was not mature during the earlier litigation).

[44]845 S.W.2d 794 (Tex. 1992).

[45]*See Valero II*, 997 S.W.2d at 209; *see also Getty*, 845 S.W.2d at 801-02.

12

rendered."[46] In this case, then, Kansas res judicata law would apply, rendering *Getty Oil* inapposite. Further, because there is no final judgment in the underlying case in this action, under Kansas law res judicata does not apply.[47]

Finally, the Court notes, that even if the indemnification claims were compulsory counter- claims, some precedent from this district would nevertheless suggest that the action should proceed. At least three cases in this District have held that a compulsory counterclaim in a prior action may nevertheless proceed as a freestanding claim in a new action if the prior case is ongoing, as it is in this case.[48] Thus, even if the indemnification claims had been mature in the prior case, the Court could still have allowed this action to proceed.

Although the claim at issue in this case is not barred as a compulsory counterclaim in the Kansas Action, the Court may nevertheless transfer this case to the Court hearing the Kansas Action sua sponte under the first-to-file rule.[49] "[T]he 'first-to-file' rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court."[50] But "simply because a court is the first to

---

[46]*Page v. Farm Credit Serv. of Amer., PCA*, No. 13–2073–RDR, 2013 WL 3328734, at *3 (D. Kan. Jul. 2, 2013).

[47]*Winston v. Kan. Dep't of SRS*, 274 Kan. 396, 413, 49 P.3d 1274, 1285 (2002) ("Res judicata (claim preclusion) prevents relitigation of previously litigated claims and consist of the following four elements: (1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits.").

[48]*Arceo v. City of Junction City, Kan.*, 182 F. Supp. 2d 1062, 1083 (D. Kan. 2002); *Raytheon*, 923 F. Supp. at 1417; *ACF Indus., Inc. v. Hecht*, 284 F. Supp. 572, 574 (D. Kan. 1967).

[49]*See PETA, Inc. v. Beyond the Frame, Ltd.*, No. CV 10–07576 MMM (SSx), 2011 WL 686158, at *2 (C.D. Cal. Feb. 16, 2011)); *Walker Group v. Firstlayer Commc'ns., Inc.*, 333 F. Supp. 2d 456, 460 (M.D.N.C.2004).

[50]*Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.*, 189 F.3d 477 (table), 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999).

13

obtain jurisdiction does not necessarily mean that it should decide the merits of the case."[51] In the Tenth Circuit, "while the first-to-file rule is generally enforced by the first court, 'the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.'"[52] As a general matter, under the first-to-file rule, courts will transfer a matter to the court where the similar claims were first filed when the second-filed suit raises claims that are substantially similar to those made in the first-filed suit.[53] As is clear from the discussion above, this case raises claims that are substantially similar to those made in the Kansas Action, and the Kansas Action involves the same issues against the same parties as this case. Thus, exercising its discretion, the Court transfers this matter to Judge Sebelius for further proceedings. The Court therefore does not address Defendants' other arguments for dismissal and denies the remainder of the motion as moot.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is transferred to Judge Sebelius for all further proceedings.

**IT IS SO ORDERED.**

Dated: July 18, 2013

                                          S/ Julie A. Robinson
                                          JULIE A. ROBINSON
                                          UNITED STATES DISTRICT JUDGE

---

[51] *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1164 (10th Cir. 1982).

[52] *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F.Supp.2d 1287, 1297 (D. Kan. 2010).

[53] *Id.*